### HOPKINS et al. v. REPUBLIC STEEL CORPORATION.

#### Civil Action No. 19517.

District Court, N. D. Ohio, E. D.

Oct. 6, 1941.

William B. Jaspert, of Pittsburgh, Pa., and George S. Baldwin, of Cleveland, Ohio, for plaintiffs.

Richey & Watts, of Cleveland, Ohio (B. D. Watts, of Cleveland, Ohio, of counsel),

and Stebbins & Blenko, of Pittsburgh, Pa., for defendant.

WILKIN, District Judge.

The report of the special master is approved and confirmed. The essential and controlling issue in the case is the question of validity. There are seven defenses. The first one alleges want of invention over the prior art, and the second one alleges that the patent claims were anticipated by prior patents and prior uses. These two defenses are closely related, and the determination of the issues raised by these defenses disposes of the case. The master, in accordance with proper custom, made findings and conclusions as to all issues, and all his findings and conclusions have been examined in the light of the objections to his report. As indicated above, his findings and conclusions are affirmed, but it is unnecessary to discuss any of the issues except those raised by the first two defenses.

The patent covers a process or method. It does not cover the apparatus or mechanical device. The process or method is a way of feeding clay into the tapping hole of a blast furnace so as to stop the flow of molten iron. The substance of that—and of every method revealed by the testimony—was the insertion of clay in the tapping hole. Fire clay was found to be a sufficiently pliable material capable of resisting the intense heat. The problem presented to the industry by its use was the finding of a method by which sufficient force could be exerted upon the clay for a sufficient time to seal the hole permanently. The evil to be prevented was the tendency to "blow-backs", i. e., sudden and disastrous expulsions of the clay. As plaintiffs stated in their brief, quoting from the patent: "In plugging tapping holes after a furnace tapping operation, * * * it is desirable to provide equipment having such capacity that a plugging operation once started may be quickly completed. Not only this, but it is desirable that the plugging operation be accomplished under such conditions as to prevent the possibility of the furnace blowing outwardly through the mud gun barrel."

Prior to the patent in suit, steam was generally used to create the pressure back of the clay. After the patent—"* * * 81 furnaces are equipped with the modern high pressure continuous feed electric guns and 20 with the high pressure continuous feed hydraulic guns, both of which are employed to practice the method invention in suit."

Plaintiffs contended that the "method of plugging tapping holes prior to the patent in suit was inefficient and extremely dangerous". They contended that their method supplied a more efficient process and removed the danger of "blow-backs". This was accomplished, however, merely by supplying a greater pressure and a more continuous pressure (continuous over a longer period).

The difference between the patented process and the prior process is a difference of degree of pressure. Since there was nothing novel about the use of clay for the purpose, and since the patent does not cover the apparatus used, the only distinguishing feature of the patented process over the prior process is time-pressure. Vaughen patent No. 544,551 (1895) was the first to employ a "mud gun". It supplied pressure apparatus to do what was formerly done by hand, "hand dolly method". It seems clear that the Vaughen "fluid pressure cylinder" disclosed a method from which all the benefits claimed for the patent in suit could have been realized if sufficient equipment and pressure had been supplied. It clearly portrayed the idea of plugging in a single operation.

Berg patent No. 1,121,224 (1914) was clearly an attempt to supply the mechanism necessary for a more continuous "tapping hole plugging operation."

The article referred to by the master which appeared in "The Blast Furnace and Steel Plant", September, 1914, also taught the method of the patent in suit. The article says: "The clay barrel is of sufficient size to hold enough clay to close the hole with one shot."

The prior art taught the use of pressure "to plug tapping hole with one stroke of the clay piston". The patented process in suit taught the use of "enormous pressure"—as stated in plaintiffs' brief, p. 50: "To completely plug the tapping hole by forcing clay under enormous pressure in a continuous, uninterrupted flow into and through the tapping hole." It seems perfectly apparent that the terms used are relative. "Enormous" and "continuous" and "uninterrupted" are not absolute. They are merely more enormous or more continuous or uninterrupted for a longer time. They describe a method which differs only in degree from the method described as "plugging tapping hole with one stroke of clay piston". The master was therefore justified in concluding that—"Whether or not

the methods actually were practiced in every detail (in the prior art) there is here such disclosure of means to perform them, even if some changes in size and power might have been necessary,* * * that there could be no invention of these methods by Hopkins and Osolin".

There can be no doubt from the evidence that the plaintiffs made a contribution to the blast furnace business. They supplied the trade with equipment which facilitated the plugging operation, but the method which they employed was not novel. They merely did better what had been done before at Jackson and elsewhere. The patent law does not contemplate nor provide compensation for every improvement. There are many contributions of thought and skill which do not qualify for the privileges accorded to invention.

The plaintiffs contended that their process had other distinguishing features, such as inserting the clay for the entire length of the tapping hole at one continuous stroke of the piston, the supplying of sufficient clay to the mouth of the tapping hole within the furnace so as to cause spreading, the plugging of the entire hole so as to prevent the creation of a "short hole", and the operation of mud gun without suspension of blast in the furnace.

These contentions need not be discussed separately. They are mere incidents or results of sufficient pressure. They do not disprove the master's finding that there was no inventive faculty or genius involved in the conception of the process by which the plaintiffs supplied sufficient pressure.